UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Milton Thomas, | Case No. 19-cv-450 (NEB/LIB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Paul Schnell, et al., | |
| Defendants. | |

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment made in accordance with the provision of 28 U.S.C. § 636, and upon Plaintiff's Complaint, [Docket No. 10],[1] as well as, his Applications to Proceeds in District Court Without Prepaying Fees or Costs. [Docket No. 6].

Thomas is civilly committed at the Minnesota Sex Offender Program (MSOP), based on a judicial finding that he is a "sexual psychopathic personality." In re Civil Commitment of Thomas, No. A15-0192, 2015 WL 4508338, at *1 (Minn. Ct. App. July 27, 2015). The Minnesota Court of Appeals described the proceedings leading to that commitment as follows:

> [Thomas] has a history of sexual-assault convictions, including a 1987 conviction for the rape and beating of two 15-year-old girls, two 1994 convictions for the rape of 13-year-old and 14-year-old girls, and a 2008 conviction for the rape of a woman, who suffered from Parkinson's disease, while in the presence of Thomas's seven-year-old niece. He also has "at least eight parole revocations," including four instances of absconding.

---

[1] Thomas was originally one of fourteen Plaintiffs in Black Elk v. Roy, No. 18-cv-3255 (DWF/LIB) (D. Minn.). In an Order dated February 22, 2019, the Court dismissed Thomas from that action without prejudice, ordered that a new action be initiated in his name, and indicated that he would need to file an individualized pleading and a new application to proceed in forma pauperis. See, Black Elk v. Roy, No. 18-cv-3255 (DWF/LIB), Order (D. Minn. Feb. 22, 2019). The present action is the new action opened for Thomas. Thomas appears to have filed his required individualized pleading twice. (Compare, Compl. for Violation of Civil Rights Under 42 U.S.C. § 1983 [Docket No. 5], with Compl. [Docket No. 10]) (same pleadings). For clarity's sake, the Court refer to the most recently filed Complaint, [Docket No. 10], as the operative pleading in the present case.

> While incarcerated, Thomas participated intermittently in sex-offender treatment programs, but never completed any of them. A summary of Thomas's treatment history reported that "Thomas admitted that he felt entitled to sex, and 'the more the better.' He also indicated he chose victims he thought would be willing to engage in sexual behavior with him with little resistance."
>
> In June 2014, the state petitioned the district court to commit Thomas as a sexually dangerous person and a sexual psychopathic personality. The district court convened a hearing in November 2014, receiving three expert reports addressing whether Thomas met the criteria for commitment. Two of the experts also testified at the hearing.
>
> Each of the experts recommended that Thomas be committed as a sexually dangerous person and a sexual psychopathic personality. They agreed that Thomas was "highly likely to reoffend" and that there was no suitable less-restrictive alternative to commitment. After finding each of their opinions to be credible, the district court considered the six factors listed in In re Linehan, 518 N.W.2d 609 (Minn. 1994) (Linehan I), and the five factors from In re Linehan, 594 N.W.2d 867 (Minn. 1999) (Linehan IV), concluding that each factor supported commitment.
>
> The district court also considered Thomas's argument that his existing criminal sentence of lifetime supervised release could operate as a less-restrictive alternative to commitment. Based on Thomas's "extensive history of failures under corrections supervision [and] continued sexual offenses despite treatment and corrections consequences," it found that Thomas "may not be safely placed in the community at this time." The district court concluded that Thomas had not shown "clear and convincing evidence that a less restrictive treatment program is available which is consistent with [Thomas's] treatment needs and the requirements of public safety." Accordingly, it ordered that Thomas be indeterminately committed to the [MSOP].

Id. Thomas appealed the district-court order committing him to the MSOP, but the Minnesota Court of Appeals affirmed his commitment. See, Id.

Thomas's convictions noted above implicated various legal consequences, two of which are critical to this action. First, under Minnesota law, courts sentencing persons convicted of sexual offenses must impose (depending on the conviction's circumstances) either a ten-year or a lifetime term of conditional release. See, Minn. Stat. § 609.3455, subds. 6–7. Second, Minnesota law requires that those convicted of sexual offenses register with the state and regularly provide

information regarding—among other things—addresses, work location, and vehicles owned; failure to register or provide accurate information is a criminal offense. See, Minn. Stat. § 243.166.

In the present action, Thomas challenges the legality of Minnesota's conditional-release and registration statutes. (See, Compl., [Docket No. 10], at 1). Thomas contends that various Defendants (1) "[t]hreatened, intimidated or coerced [him] to enter MSOP subject to violation of conditional release"; (2) "imposed upon [him] a conditional release term [for] which . . . [he] was never indicted under the proper statute"; and (3) "unreasonably direct[ed] . . . Minnesota Department of Human Services employees to inform [Thomas's] supervising agent of noncompliance with the terms of conditional release," with the result of such a report being a revocation of conditional release. (Id. at 5). Thomas asserts that this alleged conduct violates his federal constitutional rights, as well as, the "Bane Act." (See, Id. at 5, 34–35). Thomas also suggests that various provisions of the registration statute are themselves unconstitutional, at least in part due to their allegedly retributive character. (See, Id. at 23–25).

Thomas did not pay the filing fee for this matter, but instead applied for in forma pauperis (hereinafter "IFP") status. (See, e.g., IFP Appl. [Docket No. 11]).[2] Thomas's IFP Applications are now before the Court, and they must be considered before any other action may be taken in this matter.

After review, this Court concludes that Thomas qualifies financially for IFP status. However, an IFP application will be denied, and an action dismissed, when an IFP applicant has filed a complaint that fails to state a cause of action on which relief may be granted. See, 28 U.S.C. § 1915(e)(2)(B)(ii); Atkinson v. Bohn, 91 F.3d 1127, 1128 (8th Cir. 1996) (per curiam);

---

[2] Similar to his Complaint, Thomas filed his IFP Application multiple time. (See, IFP Appls. [Docket Nos. 6, 11, 12]).

Carter v. Schafer, 273 F. App'x 581, 582 (8th Cir. 2008) (per curiam) ("[C]ontrary to plaintiffs' arguments on appeal, the provisions of 28 U.S.C. § 1915(e) apply to all persons proceeding IFP and are not limited to prisoner suits, and the provisions allow dismissal without service.").

In reviewing whether a complaint states a claim on which relief may be granted, a court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. See, Aten v. Scottsdale Ins. Co., 511 F.3d 818, 820 (8th Cir. 2008). Although the complaint's factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." Id. at 570. In assessing the complaint's sufficiency, the court may disregard legal conclusions couched as factual allegations. See, Ashcroft v. Iqbal, 556 U.S. 662 (2009). Pro se complaints are to be construed liberally, but they must still allege sufficient facts to support the claims advanced. See, Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004).

As an initial matter, Thomas seeks relief under "the Bane Act" which is presumably a reference to the Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1. (See, e.g., Compl. [Docket No. 10]). However, Thomas is a civil detainee of the State of Minnesota seeking relief exclusively from Defendants sued in their official capacities as agents of the State of Minnesota. (See, Id.). It is therefore difficult to ascertain what relevance a California statute might have here.[3]

More relevant are Thomas's claims that the conditional-release and registration statutes violate his federal constitutional rights. However, Thomas's claims regarding his federal constitutional rights are nevertheless insufficiently pleaded and should be dismissed.

---

[3] Additionally, any claims under California law do not raise a federal question of law, see, 28 U.S.C. § 1331, and the Complaint provides no reason to believe that the parties are of diverse citizenship, see, 28 U.S.C. § 1332(a). Thus, this Court lacks original jurisdiction over any claims brought pursuant to state law.

4

Thomas raises essentially three grounds for relief in this proceeding. First, he suggests that, for a variety of reasons, he should not have been subject to a term of conditional release at all under Minnesota law as a result of his offenses. (See, e.g., Id. at 32–33). However, Thomas's various arguments on this point, including his argument that conditional release is a "new charge" for which additional procedures or finding of fact are necessary, lack merit.

In relation to Thomas's 2008 conviction, the Court notes that the sentencing court imposed a lifetime conditional-release term based on that conviction. See, State v. Thomas, No. CR-08-3792, Sentencing Summary Sex Offense (Minn. Dist. Ct. June 4, 2009). Under the plain terms of the conditional-release statute, "when the court commits an offender to the custody of the commissioner of corrections for a violation of [Minn. Stat. § 609.344], and the offender has a previous or prior sex offense conviction, the court shall provide that, after the offender has been released from prison, the commissioner shall place the offender on conditional release for the remainder of the offender's life." Minn. St. § 609.3455, subd. 7(b). Imposing a lifetime conditional-release term was thus a straightforward application of § 609.3455 in Thomas's case. Despite Thomas's assertions and arguments to the contrary, conditional release is not a "new charge" making additional procedures or findings of fact necessary. Rather, it is simply an aspect of the sentence imposed for the offense for which Thomas was convicted. The Complaint does not allege that the criminal proceedings themselves violated Thomas's federal due-process rights, and it would be in any event far too late for Thomas to seek to have his 2008 conviction invalidated. See, 28 U.S.C. § 2244(d).

Second, Thomas alleges that the terms of his conditional release unlawfully coerce him into complying with sex-offender treatment, as failure to comply with treatment amounts to a violation of the terms of his conditional release and may therefore result in the revocation of his

5

conditional release and return to prison. (See, Compl., [Docket No. 10], at 13, 21, 35–36). Never, though, does Thomas allege how the requirement that he complete sex-offender treatment violates his constitutional rights. The mere fact that the State of Minnesota imposes treatment as a condition of release from incarceration does not, by itself, amount to a constitutional violation; this is, after all, the entire point of conditional release—that defendants abide by conditions under the potential penalty of revocation. Without further allegations regarding the specific constitutional rights infringed due to the condition requiring treatment, Thomas's claim is insufficiently pleaded.

Third, Thomas alleges that the conditions imposed by the Minnesota registration statute, Minn. Stat. § 243.166, constitute a violation of his Fourth and Fourteenth Amendment rights. (See, Compl., [Docket No. 10], at 1, 23–25, 30–33). These constitutional claims as raised against the Minnesota registration statute have previously been squarely rejected, including by the Eighth Circuit Court of Appeals. See, e.g., Larson v. Roy, No. 12-cv-0707 (MJD/AJB), 2013 WL 3280247, at *5–8 (D. Minn. June 26, 2013) (citing Gunderson v. Hvass, 339 F.3d 639, 643 (8th Cir. 2003)). Thus, Thomas's claims fail as a matter of law.

Accordingly, for the reasons discussed herein, the undersigned recommends that this matter be dismissed and Thomas's various IFP Applications be denied as moot. Thomas's claim regarding the condition of treatment amounting to a violation of his constitutional rights is at least theoretically amenable to repleading and therefore should be dismissed *without* prejudice. Amendment of his other claims would be futile, and those claims should therefore be dismissed *with* prejudice. See, Pet Quarters, Inc. v. Depository Trust & Clearing Corp., 559 F.3d 772, 782 (8th Cir. 2009) (stating that dismissal with prejudice for failure to state claim upon which relief may be granted is not abuse of discretion when amendment of complaint would be futile).

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. This matter be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) as follows:

    a. The claim regarding the condition of treatment amounting to a violation of constitutional rights be **DISMISSED without prejudice**.

    b. All other claims **DISMISSED with prejudice**.

2. Plaintiff Milton Thomas's applications to proceed *in forma* pauperis, [Docket Nos. 6, 11, and 12], be **DENIED as moot**.

Dated: July 1, 2019
s/Leo I. Brisbois
Leo I. Brisbois
U.S. MAGISTRATE JUDGE

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).